UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL SCANLAN,

                              Plaintiff,

                                                                                         <u>DECISION AND ORDER</u>

                                                                                           08-CV-6195L

            v.

KODAK RETIREMENT INCOME PLAN,
KODAK RETIREMENT INCOME PLAN COMMITTEE,
EASTMAN KODAK COMPANY,
TRUSTEE OF THE KODAK RETIREMENT INCOME PLAN,

                              Defendants.
_____

## **INTRODUCTION**

Plaintiff Michael Scanlan, ("Scanlan"), a former participant in the Kodak Retirement Income Plan (the "Plan"), brings this action against the Plan and its administrators (collectively "KRIPCO"), seeking, *inter alia*, to compel defendants to declare a "partial termination" of the Plan and to vest the pension benefits in several hundred plan participants, pursuant to the Employee Retirement Income Security Act ("ERISA") and the Plan terms.

The defendants have moved to dismiss the original and amended Complaints (Dkt. #7, #14) pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6). For the reasons set forth below, those motions are granted, and the First Amended Complaint is dismissed.

# FACTS

Scanlan was employed by Kodak for four years and six months, until Kodak sold the division in which he was employed to Carestream. Although Scanlan did not meet Kodak's five-year vesting requirement at that time, he nonetheless filed a claim seeking benefits, arguing that the Carestream transaction caused a "partial termination," which pursuant to the Plan's terms, should have rendered his benefits fully vested.

Although his claim was initially denied, Scanlan challenged the denial. On or about March 31, 2008, the Plan administrators reversed their position, and notified Scanlan that he would receive pension benefits under the Plan.

Scanlan commenced this action on April 29, 2008, purporting to assert claims on behalf of himself and other Plan participants not parties to this case. He filed a First Amended Complaint ("Amended Complaint") on August 19, 2008. (Dkt. #13). In the First Amended Complaint, Scanlan requests that defendants be compelled to declare that a "partial termination" has taken place as that term is defined in the Plan, meaning that all Plan participants within a particular category are fully vested. He further asks that defendants be ordered to pay such participants the full amount of earned benefits. Finally, Scanlan complains that if defendants are not ordered to do so, and if the Internal Revenue Service changes the Plan's present tax-qualified status as a result of the defendants' failure to recognize the alleged partial termination, he and others may suffer damages, in the form of additional taxes levied on their Plan distribution payments.

Since the commencement of this action, Scanlan has elected, pursuant to his rights under the Plan, to receive his Plan benefits via a lump sum distribution. Those benefits have been paid in full by defendants.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### II. Scanlan's "Tax Loss" Claims

Initially, I note that Scanlan has failed to allege the existence of an actual "case or controversy" with respect too his claim of damages in the form of increased taxation of his benefit payments.

Pursuant to Article III of the United States Constitution, a district court's jurisdiction is limited to cases which present an "actual controversy" between the parties. *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271, 272-263 (W.D.N.Y. 1999) (controversy requirement applies

where plaintiff seeks declaratory relief). In order to demonstrate that an actual controversy exists to be decided, a plaintiff must demonstrate the presence of imminent injury, as well as legal standing to pursue damages for that injury when it occurs. The Supreme Court recently summarized the requirements of Article III:

> Article III of the Constitution restricts [judicial power] to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons . . . The doctrine of standing is one of several doctrines that reflect this fundamental limitation. It requires federal courts to satisfy themselves that "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction." . . . To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1148 (2008) (internal citations omitted), *quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Here, Scanlan's claim of threatened harm is comprised of speculative assertions that he "*may* suffer adverse tax consequences," in the remote event that the Plan's tax-qualified status is challenged and lost. (Dkt. #1, #13 at ¶¶ 56-70 (emphasis added)). Scanlan does not allege that his own benefits were unduly taxed, that the Plan has lost or will lose its tax-qualified status, or even that the Plan's tax-qualified status with the IRS has been investigated, altered, appealed or threatened in any way. As alleged, Scanlan's claim would require not one, but several hypothetical events to occur before it could be adjudicated, including an IRS audit, determination by the IRS to revoke tax-qualified status, the absence of a successful appeal of the determination by defendants, imposition of additional taxes upon Scanlan and/or other Plan participants by the

IRS based upon the revocation, and payment of those additional taxes by Scanlan and/or others. Because Scanlan's threatened injury is neither concrete nor imminent, but relies upon an extended series of hypothetical events, I find that it is too remote, and too speculative, to present an actual controversy, or to afford Scanlan standing to pursue it at this juncture as a standalone claim for damages. For the same reason, Scanlan's allegations of potential tax consequences fail to raise a right to relief "above the speculative level." *Bell Atlantic Corp.*, 550 U.S. 544 at 555. Accordingly, Scanlan's claim of damages relating to the potential taxation of his benefits, or those of others, must be dismissed.

### III.    Scanlan's Breach of Contract Claims

Scanlan also alleges that defendants violated certain provisions of the Plan, including but not limited to promises to comply with IRS regulations related to vesting.

It is well-settled that claims for breach of contract arising out of employee benefit plans, like all other state law causes of action relating to employee benefit plans, are conclusively preempted by ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *Cicio v. Does*, 385 F.3d 156, 158 (2d Cir. 2004); *Westphal v. Eastman Kodak Company Longterm Disability Plan*, 2006 U.S. Dist. LEXIS 41494 at *18 (W.D.N.Y. 2006).

Accordingly, to the extent that Scanlan alleges defendants' breach of their contractual allegations under the Plan, such claims are pre-empted by ERISA and Scanlan's remedies are limited to those that ERISA prescribes.

**IV.     Scanlan's Request for Declaratory and Injunctive Relief Pursuant to ERISA**

Scanlan's demand for relief is straightforward. He asks that the Court order the defendants to declare that a "partial termination" has occurred for certain Plan participants, as that term is defined by the Plan, and requests a mandatory injunction requiring the defendants to vest those participants in their benefits. Scanlan pursues this relief pursuant to ERISA Section 501(a)(1)(B), and alternatively under Section 502(a)(3), ERISA's so-called "catch-all" provision. 29 U.S.C. §1132(a).

Initially, since Scanlan has already been found fully vested by defendants, and his benefits have been paid to him in full, his request for relief is moot with respect to himself. Thus, the Court's initial focus is upon whether Scanlan has standing to assert any claims pursuant to Section 502(a)(1)(B) or Section 502(a)(3) on behalf of other Plan participants.

Section 502(a)(1)(b) of ERISA empowers a plan participant or beneficiary to bring a civil action to recover benefits due, enforce rights, or clarify rights to future benefits, which arise under ERISA-governed plans. 29 U.S.C. §1132(a)(1)(b). Section 503(a)(3) permits plan participants, beneficiaries and fiduciaries to pursue equitable relief to enforce Plan provisions and ERISA regulations where such relief is unavailable elsewhere. 29 U.S.C. §1132(a)(3). In determining whether former employees may be considered "plan participants" for purposes of Section 503(a), the Supreme Court has found that:

> the term "participant" is naturally read to mean . . . former employees who have a reasonable expectation of returning to covered employment or who have a "colorable claim" to vested benefits . . . A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the phrase "may become eligible."

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-118 (1989).

Here, Scanlan is a former employee who does not expect to return to employment, and who has received the full amount of vested benefits to which he was entitled under the Plan. Nonetheless, Scanlan claims that he remains a "participant" in the Plan because he is still seeking an additional "benefit" under the Plan – the "benefit" of the equitable relief that he has requested on behalf of certain remaining Plan participants. *See generally* 29 U.S.C. §1002(7) (a participant is any employee or former employee who *"is or may become* eligible to receive a benefit of any type") (emphasis added).

Scanlan's request for equitable relief on behalf of others, however, does not imbue him with individual standing to pursue a claim in which he has no longer has any personal interest. *See generally Dickerson v. Feldman*, 426, F. Supp. 2d 130, 136 (S.D.N.Y. 2006) (courts are powerless to craft a remedy for a plaintiff who is no longer an ERISA plan participant: thus, "[s]tated colloquially (and mixing metaphors), while Plaintiff may have an axe to grind, he no longer has a dog in this fight"). The benefit that Scanlan seeks is simply not one for which Scanlan himself is "eligible, or may become eligible." 29 U.S.C. §1002(7). As Scanlan concedes, he would receive no personal gain from the broader vesting he asks the Court to order for a class of other, non-party Plan participants. (Dkt. #21 at 21 (Scanlan does "not seek and will receive no additional funds from Defendants [if his claims are successful]")). Because Scanlan does not allege eligibility, or potential eligibility, for the Plan-related benefit he seeks to obtain, he is not a "plan participant" and has no standing to proceed. 29 U.S.C. §1002(7). *See In re J.P.*

*Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 271 (S.D.N.Y. 2007) (where named plaintiffs lack standing to assert claims on their own behalf, those similarly situated to them must be excluded from plaintiff class). *See generally Central States Southeast & Southeast Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 197-198 (2d Cir. 2005) (remanding ERISA case for resolution of standing issue not previously examined by district court, where plaintiffs failed to demonstrate whether they incurred an injury or were otherwise damaged by defendants, since "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury").

Furthermore, even if Scanlan did have standing to proceed, he would still be unable to rely upon the "catch-all" provision of Section 502(a)(3), which permits civil actions by a "participant, beneficiary or fiduciary" to obtain injunctive or other equitable relief to enforce Plan terms and ERISA provisions, or prevent violations thereof. *See* 29 U.S.C. §1132(a)(3). Section 502(a)(3) relief is available only to obtain "those categories of relief that were typically available in equity," *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006), and cannot be used to pursue requests for equitable relief that merely ask the Court to pay a sum of money, and thus are, at heart, suits for money damages. *See Amara v. Cigna Corp.*, 2008 U.S. Dist. LEXIS 45947 at *33 (D. Conn. 2008), *citing Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). As the Second Circuit has observed in an action by ERISA plan beneficiaries seeking recalculation and payment of benefits via an injunctive

order, "[w]hile the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under Section 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available [and forecloses application of Section 502(a)(3) where other relief provisions of ERISA are applicable]." *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006), *citing Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) ("[i]n determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label"). The goal of Scanlan's claims is unquestionably defendants' payment of money damages to certain Plan participants, as well as attorneys fees to Scanlan's counsel, all of which is well within the scope of Section 502(a)(1)(b).[1]

Finally, I note that this determination does not prejudice the ability of the absent Plan beneficiaries – those whose interests Scanlan purports to champion – to vindicate their own rights under the Plan. They may pursue relief, if and to the extent that they are entitled to it, on their own behalf.

Accordingly, Scanlan's claims for declaratory and injunctive relief pursuant to ERISA must be dismissed.

---

[1] This is not the first time Scanlan's counsel has attempted to obtain legal fees stemming from its participation in Scanlan's successful appeal of defendants' initial denial of benefits. In the already dismissed matter of *Kickham Hanley P.C. v. Kodak Retirement Income Plan et al.*, 08-CV-6087, Scanlan's law firm unsuccessfully sought to recover attorneys fees from the Plan directly, under a common fund theory.

# CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Scanlan's claims in their entirety (Dkt. #7, #14) are granted.   Defendants' motion for leave to file a supplemental declaration and memorandum of law (Dkt. #24), which is unopposed, is granted.  The Amended Complaint (Dkt. #13) is hereby dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 12, 2010.